DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Timothy Graulich, Esq.
Joanna McDonald, Esq.

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**Andrade Gutierrez Engenharia S.A., et al.**[1]<br><br>**Debtors in a Foreign Proceeding** | **Chapter 15**<br><br>**Case No. 26-12355 ( )**<br><br>**(Joint Administration Pending)** |

# DECLARATION OF EDUARDO AUGUSTO MATTAR IN SUPPORT OF THE MOTION FOR (I) RECOGNITION OF FOREIGN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, (III) RECOGNITION AND ENFORCEMENT OF BRAZILIAN CONFIRMATION ORDER AND RELATED EJ PLANS AND (IV) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE AND ADDITIONAL FIRST DAY FILINGS

I, Eduardo Augusto Mattar, founding partner of Mattar — Sociedade de Advogados, a law firm located in São Paulo, Brazil ("MATTAR"), and a lawyer admitted to the practice of law in Brazil, hereby declare under penalty of perjury under the laws of the United States of America as follows:

[1] The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with each Debtor's tax identification or corporate registry number, are: Andrade Gutierrez Engenharia S.A. (Brazil – No. 17.262.213/0001-94) ("AGE"), Andrade Gutierrez Construções e Serviços S.A. (Brazil – No. 39.469.291/0001-05) ("AGCS"), Andrade Gutierrez Investimentos em Engenharia S.A. (Brazil – No. 17.027.611/0001-26) ("AGIE"), Andrade Gutierrez International S.A. (Brazil – No. 20.253.172/0001-84) ("AGINT"), Zagope SGPS S.A. (Portugal – No. 507403177) ("Zagope"), and INZAG Germany GmbH (Germany – No. HRB 32335) ("INZAG").

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this statement, except for those portions specified as being otherwise.

2. I am making this declaration (this "Declaration") in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. MATTAR represents Andrade Gutierrez Engenharia S.A. and its affiliated debtors (the "Debtors"), each of which is also a debtor in a *recuperação extrajudicial* proceeding in the Federative Republic of Brazil pursuant to Federal Law No. 11,101 of February 9, 2005 (the "Brazilian Bankruptcy Law"), filed before the 1st Commercial Court of the District of Belo Horizonte (the "Brazilian EJ Court," and such proceeding, the "Brazilian EJ Proceeding"). I submit this declaration in support of the (a) *Official Form 401 Petitions* (collectively, the "Petitions"), (b) *Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, (III) Recognition and Enforcement of Brazilian Confirmation Order and Related EJ Plans, and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Motion"),[2] (c) *Motion Pursuant to Fed. R. Bank. 2002 and 9007 Requesting Entry of an Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Scheduling Motion") and (d) *Motion for an Order Directing the Joint Administration of Andrade Gutierrez Engenharia S.A. and its Debtor Affiliates Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 1015(b)* (the "Joint Administration

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion or the *Declaration of Gustavo Coutinho in Support of the Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, (III) Recognition and Enforcement of Brazillian Confirmation Order and Related EJ Plans and (IV) Related Relief Under Chapter 15 of the Bankruptcy Code and Additional First Day Filings* (the "Foreign Representative Declaration"), each as filed contemporaneously herewith and as applicable.

Motion," and, together with the Petitions, Motion and Scheduling Motion, the "First Day Filings"), filed contemporaneously herewith.

**Background and Qualifications**

4. I have been practicing law for over 25 years in Brazil. I obtained my bachelor's degree from the Universidade de São Paulo, USP School of Law, in 2000. In 2001, I obtained a specialization degree from the same institution. I specialize in corporate and bankruptcy matters, with a particular emphasis on corporate disputes (arbitration and litigation) and large-scale restructurings. I have been recognized as a leader in my practice area by *Chambers Latin America*, *Who is Who Legal*, *The Legal 500*, and other important legal directories. I am a recognized expert in bankruptcy in Brazil, and I am fully familiar with the Brazilian Bankruptcy Law and with the Brazilian EJ Proceeding.

5. I have been advising the Debtors on all Brazilian law aspects of their reorganizations since March 2021. To assist the Court's consideration of the First Day Filings, I submit this declaration comprising matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements reflect Brazilian law based on my education and years of experience practicing Brazilian law in Brazil. Where the matters stated in this declaration are statements of fact, they are either: (a) based on my personal knowledge, and are known to me to be true and accurate, or (b) if not within my personal knowledge, are derived from documents and/or information supplied to me by or on behalf of the Debtors, and are true to the best of my knowledge, information and belief.

**I. Brazilian Extrajudicial Reorganizations (EJs)**

6. Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005, and was amended several times since its enactment.

The purpose of the Brazilian Bankruptcy Law is to enable debtors with viable economic activities to overcome financial and economic distress and to preserve their productivity, employees, and the interests of their creditors, thus promoting the preservation of the debtor's business as a going concern. In addition, there is a general policy of equal treatment of similarly situated creditors, including holders of secured claims. Lastly, the Brazilian Bankruptcy Law seeks to facilitate speedy bankruptcy proceedings and foster the direct collaboration with, and participation of, governmental authorities in a reorganization.

7. The Brazilian Bankruptcy Law regulates corporate liquidations and reorganizations. The two types of reorganizations are (a) judicial reorganization proceedings, known as *recuperação judicial* or "RJs," and (b) prepackaged reorganization proceedings, known as *recuperação extrajudicial* or "EJs." Because the Brazilian EJ Proceeding is an EJ, only EJs will be discussed herein.

**A. Brief Description of EJ Proceedings**

8. Chapter VI of the Brazilian Bankruptcy Law establishes EJs as one of the proceedings through which companies can reorganize. An EJ proceeding seeks Brazilian Court authorization to implement an agreement—the so-called EJ plan—negotiated between the debtor and a subset of its creditors, which then binds all creditors subject to the EJ proceeding. It administers the claims of all creditors whose claims are being restructured in a single proceeding. It is similar to a scheme of arrangement found in certain jurisdictions (*e.g.*, the U.K., the Cayman Islands, or Bermuda) or a prepackaged chapter 11 case under the Bankruptcy Code. In an EJ proceeding, a debtor may negotiate and agree, out-of-court, to an EJ plan with its creditors and then submit that plan to a competent Brazilian court for consideration and, if deemed acceptable, receive confirmation—as the Debtors did with their EJ Plans.

**B. Who May File an EJ Proceeding in Brazil**

9. Only a debtor may file an EJ petition in Brazil. Creditors are not permitted to do so, as an EJ may not be filed on an involuntary basis. Also, to file for an EJ, the debtor must be considered a business company or a businessperson. The debtor, at the time that the application is made, is also required to have been doing business regularly for over two (2) years and must meet certain subjective and objective requirements, as described below.

10. Brazilian courts have consistently allowed for the filing of EJ petitions by foreign companies. For example, filing in Brazil has been accepted on a variety of different independent bases, including in cases where the foreign debtor (a) is a subsidiary of a Brazilian holding company that does not develop independent business activities and is jointly filing the EJ petition with such Brazilian holding company, (b) is merely a financial vehicle of the Brazilian holding debtor or constituted for finance or for corporate organizational purposes, (c) is part of a corporate conglomerate having Brazil as its center of main interests (COMI), or (d) has its operations and activities in Brazil.

11. Moreover, the EJ petition must be filed in the appropriate state civil court in the jurisdiction where the Brazilian debtor's (or debtors' group's) principal place of business (*principal estabelecimento*) is located. The appropriate state civil court has exclusive jurisdiction over matters relating to the claims being restructured. For the Debtors, that is the Brazilian Court.

**C. Requirements for Commencing an EJ Proceeding**

12. In order to file an EJ petition in Brazil, the following requirements must be met: the debtor shall not (a) already be subject to a bankruptcy liquidation proceeding, and if it has been in the past, the resulting liabilities shall have been discharged by a final court order; (b) have any pending judicial reorganization case, or have been granted a judicial reorganization or confirmation of another EJ plan within the last two (2) years; and (c) have been convicted nor

have a senior manager or controlling shareholder who has been convicted of any bankruptcy crime.

13. The EJ plan presented with an EJ petition also has to comply with the following requirements: (a) it cannot accelerate the payment of amounts that would not have come due if the restructuring had not occurred or contemplate provisions that harm creditors not subject to the proceeding; (b) all similarly situated creditors within the same class must be treated equally (subject to narrow exceptions, such as where certain creditors are providing new capital); (c) only prepetition claims may be subject to the plan; (d) the disposition of any asset given as collateral may only occur with the consent of the applicable secured creditor(s) (as prescribed by the relevant financing and/or collateral documentation); and (e) the plan shall not modify the exchange rate variation in the calculation of claims expressed in foreign currency without the express consent of the relevant creditor.

14. Along with filing the EJ petition, the debtor must file an EJ plan, which includes a description of the causes of its financial distress, its financial statements for the previous year of operations and the period of the last day covered by the previous year's financial statement through as close as possible to the date of filing, a list of its impaired creditors and claims, and any other pertinent information and documents.

15. As a general rule, an EJ plan will become effective only upon confirmation by a competent Brazilian court, as further explained below. Notwithstanding, the Brazilian Bankruptcy Law does permit an EJ plan to become effective upon filing of the EJ plan before confirmation with respect to the payment and restructuring of impaired claims; provided that, if the competent Brazilian court ultimately does not confirm such EJ plan, then those impaired claims will be restored to the *status quo ante.*

16. Further, according to the recent modifications to the Brazilian Bankruptcy Law, a debtor may seek confirmation of an EJ plan if it demonstrates that creditors representing more than half (1/2) of the total amount of the debt of each class of impaired claims being restructured consented to, and executed, the EJ plan—as is the case for the EJ Plans at issue in these Chapter 15 Cases. Alternatively, a debtor may ultimately seek confirmation of an EJ plan by (a) first demonstrating that creditors representing at least one-third (1/3) of the total amount of the debt of each class of impaired claims being restructured consented to the EJ plan and (b) then soliciting, within 90 days from the filing, consent from as many additional impaired creditors as are necessary to achieve the confirmation quorum of creditors representing more than half (1/2) of the total amount of the debt of each class of impaired claims being restructured.

17. When calculating the aforementioned consent thresholds, Brazilian Bankruptcy Law provides that (a) claims expressed in foreign currencies will be converted into the local currency as of the day before the EJ plan was executed and (b) claims held by related parties will not be counted in any such calculation.

**D. The Debtor's Operations During the EJ Proceeding**

18. Similar to a chapter 11 proceeding, during an EJ proceeding, the debtor is a debtor in possession and retains the right to manage its assets and affairs and to operate its business. The officers and directors of the debtor continue to be duly authorized to act on the debtor's behalf. In general, no professional is appointed by the Brazilian court to oversee the debtor's operations during the EJ proceeding, but it may nonetheless appoint one for the specific scope of analyzing whether the debtor complied with objective filing requirements under the Brazilian Bankruptcy Law.

19. Again, similar to a chapter 11 proceeding, recent modifications to the Brazilian Bankruptcy Law provide for a 180-day stay of all actions and enforcement proceedings against

the debtor related to claims being restructured pursuant to the EJ plan—irrespective of whether such claims are held by creditors that executed the EJ plan. However, in order to receive the benefit of this stay, the debtor must demonstrate, *prima facie,* that creditors representing at least one-third (1/3) of the total amount of the debt of each class of impaired claims being restructured consented to, and executed, the EJ plan. In other words, obtaining the stay only depends on a debtor evidencing to the Brazilian court that it has sufficient creditor support in favor of its proposed EJ plan (*i.e.*, filing an EJ plan with one-third (1/3) creditor support).[3] The stay commences when the debtor files an EJ plan meeting these requirements with the Brazilian court, and is subsequently ratified by the court order accepting the Brazilian proceeding.

20. The Debtors have met this requirement in these Chapter 15 Cases because their EJ Plans are being executed by a creditor representing a majority of the claims being restructured (which includes the Notes). Moreover, the Brazilian Court ratified the stay pursuant to the Initial Court Order (as defined below). Accordingly, under Brazilian Bankruptcy Law, a stay of litigation and enforcement proceedings with respect to the claims being restructured (which includes the Notes) was in effect until the entry of the Brazilian Confirmation Order.

### E. The Plan Confirmation Process and Notification Requirements in an EJ Proceeding

21. Under Article 163 of the Brazilian Bankruptcy Law, any claims against a debtor (other than labor claims, tax claims, and certain other claims that are not relevant here) that exist on the date of the EJ filing, whether matured or unmatured, may be impaired by an EJ plan. An EJ plan may impair multiple classes of claims or be limited to a single class of similarly situated claims against a debtor. The debtor may classify claims in a single class if those claims are of

[3] *See* Paragraph 7 of Article 163 of the Brazilian Bankruptcy Law.

the same nature; provided, however, that as a general rule, if claims are classified together, then such claims being impaired by the EJ plan must receive similar treatment under the EJ plan.

22. Under Article 164 of the Brazilian Bankruptcy Law, following the acceptance of a petition for confirmation of an EJ plan, a court must order the publication of a notice in the official publication of the judiciary branch (the "Court Official Gazette"). This notice is intended to give notice to all affected creditors of their right to challenge or object to the proposed plan on various grounds within a statutory 30-day objection period, including (without limitation) objecting on the basis that the EJ plan does not have the requisite majority consents for confirmation or that it violates certain statutory provision (as further explained below). Under Article 164, first paragraph, of the Brazilian Bankruptcy Law, the debtor must send a letter to the affected creditors, informing them about the filing of the EJ proceeding, the main terms of the EJ Plan and the objection period.

23. After the expiration of the 30-day objection period, a debtor will be invited to answer any timely-filed objections to the proposed EJ plan within five (5) days. Afterwards, the Brazilian court is required to decide on the proposed EJ plan and any objections filed by creditors. The plan will be confirmed so long as (a) it has been executed by creditors representing more than half (1/2) of the total amount of the debt of each class of impaired claims being restructured and (b) certain other specific requirements have been met (as further explained below). The Brazilian court will then determine whether notice of the plan was properly published, whether all other related administrative requirements were properly completed and whether the Brazilian court finds that the EJ plan is not the result of (and will not result in) any fraudulent or otherwise harmful actions to creditors. A Brazilian court's decision on confirmation is subject to appeal, but any appeals that are filed do not automatically stay the proceeding or the confirmation order of an EJ plan.

24. Creditors are given notice of every decision in the EJ proceeding, and creditors have 15 business days to file an appeal. This timeline starts running from the date creditors are directly notified of the applicable decision or the date of publication of each decision in the Court Official Gazette, depending on which method of notification the court will use. The entire EJ proceeding is supervised by the Brazilian court, which assesses whether all the parties in interest were given proper notice and proper means of defending their rights, pursuant to the due process requirements of Brazil's Federal Constitution.

**F. The Effects of the Confirmation of the Plan**

25. The court will confirm an EJ plan if (a) the requisite majority and all other legal requirements are met (as described in paragraphs 12–17 above) and (b) it does not contemplate any of the acts set forth in Article 130 of the Brazilian Bankruptcy Law (*i.e.*, with respect to fraudulent conveyances or acts to defraud creditors) nor has any other defects that would merit its rejection.

26. If the requisite majority and all other legal requirements are met, the court will confirm the EJ plan, and such EJ plan will bind all holders of claims impaired under the plan. Similar to confirmation of a plan under chapter 11 of the Bankruptcy Code, confirmation of the EJ Plans includes all its content, including all schedules and appendices thereto.

27. If the EJ plan is confirmed, the debtor will continue its normal activities without any supervision by the court. Pursuant to Article 161 of the Brazilian Bankruptcy Law, the EJ plan's confirmation order is considered a judicially enforceable instrument. Therefore, if the debtor or any other implicated party fails to perform any obligation provided thereunder, a creditor may judicially seek the enforcement of the terms of the EJ plan before the debtors, including by seeking specific performance pursuant to Articles 536 to 538 of the Brazilian Civil Procedure Code (Law 13,105 from March 16, 2015).

## II. Brazilian Bankruptcy Law: Relevant Factors for Granting Additional Relief Set Forth in Sections 1507 and 1521 of the Bankruptcy Code

### A. Brazilian Bankruptcy Law Provides Fair Treatment to All Holders of Claims Against or Interests in the Debtor's Property

28. As outlined above, the procedural safeguards for creditors under Brazilian Bankruptcy Law are robust. For example, with respect to EJ proceedings, the requisite majority consents discussed above help ensure that creditors are treated fairly. More specifically, consent thresholds help ensure fair treatment to all impaired creditors because in order for a debtor to obtain the significant level of consensus needed to be able to submit an EJ plan executed by a majority of creditors in each class of claims impaired under the EJ plan, the debtors must have actively negotiated an EJ plan with creditors of each class of claims impaired under the EJ plan before such plan is even submitted to the Brazilian court.

29. Moreover, as noted above, creditors may challenge or object to a debtor's proposed EJ plan within 30 days of the publication of notice in the Court Official Gazette. The Brazilian Bankruptcy Law provides that such creditors may only object to an EJ plan's confirmation on the basis that it (a) does not comply with the requisite majority for EJ plan confirmation; (b) contemplates certain actions[4] that would lead to the liquidation of the debtor; (c) contemplates a fraudulent conveyance or other actions designed to defraud creditors, as

[4] Article 94, III, of the Brazilian Bankruptcy Law sets forth the following actions which would bar the confirmation of a plan: (a) the debtor makes a hasty sale of its assets or engages in value-destructive or fraudulent acts to make payments to some creditors; (b) the debtor enters into, or tries to enter into, simulated transactions or sale of assets to third parties, in order to delay payments due or to defraud creditors; (c) the debtor transfers its main business facilities to third parties without the consent of all creditors and while not retaining sufficient assets to satisfy the existing claims; (d) the debtor enters into a simulated transaction to transfer its main business facilities in order to circumvent the enforcement of the law or to defraud creditors; (e) the debtor grants new or additional collateral to existing creditors, not retaining enough free assets to pay for its current debts; (f) the debtor cannot be found and leaves no agent with enough assets to pay its currents debts; and (g) the debtor does not comply with any provision set forth in a confirmed judicial reorganization plan.

described in Article 130 of the Brazilian Bankruptcy Law; or (d) contemplates any violation of any other provision established by the Brazilian Bankruptcy Law or any other applicable law.

30. Once an EJ plan is confirmed by the Brazilian court, the EJ plan comes into effect, except if provided otherwise in the EJ plan.

31. Creditors may seek reversal of a reorganization plan confirmation order. Within 15 business days after notice of plan confirmation, creditors may file an appeal to be considered by the Brazilian Court of Appeals, which does not automatically stay the confirmation order—in order to do so, creditors would have to request a specific injunction before the court of appeals. Likewise, a debtor may appeal an order that did not confirm an EJ plan within 15 business days after notice, addressed to the relevant Brazilian Court of Appeals, and that appeal as a general rule will not stay the order (same as described above).

32. Finally, after the relevant Brazilian Court of Appeals hears any such appeal, the creditors and the debtor will be afforded the chance to file new appeals, within 15 business days from notice of such decision, addressed to the Brazilian Superior Court of Justice (for any violation of federal law) and an extraordinary appeal to the Brazilian Supreme Court (for any violation of Brazil's Federal Constitution). Creditors receive notice of court decisions through an electronic notice issued by the state court's website or a publication in the Court Official Gazette, which is publicly available and may be consulted by any interested party. The deadlines for filing appeals run from the date of the receipt of the electronic notice or of the publication in the Court Official Gazette, as applicable.

### B. Interests of Creditors and Other Interested Parties Are Sufficiently Protected by the Brazilian Bankruptcy Law

33. I have been informed by U.S. counsel to the Foreign Representative ("U.S. Counsel") that, in order to receive additional relief upon recognition of a foreign proceeding

under section 1521 of the Bankruptcy Code, the "interests of creditors and other interested entities, including the debtor, [must be] sufficiently protected." 11 U.S.C. § 1522(a). Moreover, I understand from U.S. Counsel that U.S. courts have focused on the procedural fairness of the foreign proceeding in order to determine whether creditors are sufficiently protected. As discussed throughout this Declaration, Brazilian Bankruptcy Law sufficiently protects the interests of creditors and other interested parties through a variety of means. For example, the Brazilian Bankruptcy Law maintains a robust set of procedural safeguards that must be provided for within a Brazilian EJ proceeding. *Supra* ¶¶ 28–32. Furthermore, the EJ plan treats all similarly situated creditors equally and establishes creditors' entitlements in a manner, as I understand from U.S. Counsel, substantially similar to what might occur under U.S. law. *Infra* ¶¶ 39-40.

### III. <u>United States Claimholders Will Not Be Prejudiced or Inconvenienced in Processing Claims</u>

34. Brazilian Bankruptcy Law provides creditors with adequate notice of timing and procedures for filing objections to the EJ plan and the proposed treatment of claims. First, as mentioned above, upon confirming the debtor's eligibility and approving the EJ petition, the Brazilian court will render an initial court order ordering that notice of the proceeding, addressed to all impaired creditors, be sent via letter and published in the Court Official Gazette. Accordingly, all of the debtor's creditors are given notice of the proceeding, of the EJ plan presented therewith, and the deadline for any eventual objections. Additionally, the Debtors provided notice of the Brazilian EJ Proceeding, as described in paragraphs 41–49 below. Moreover, the Brazilian EJ Proceeding does not require filing proofs of claim in order to receive any payment; instead, all creditors with obligations being restructured under the EJ plan will be paid pursuant thereto.

35. Further, the Brazilian Bankruptcy Law does not differentiate between foreign and local creditors, meaning that foreign and local creditors are subject to proceedings under the Brazilian Bankruptcy Law on the same terms described herein and have the same rights and protections, including the right to notice, object and be heard. Foreign creditors are entitled to be listed on the same list of creditors and are bound by the same procedures and deadlines as local creditors. In fact, foreign creditors with claims denominated in currencies other than Brazilian *reais* are entitled to an additional protection—an EJ plan cannot convert their claims from a foreign currency to Brazilian *reais* without specific consent of the relevant creditor, which is an important protection for foreign creditors, as they do not become subject to currency exchange risk while the case is pending or as a result of the approved EJ plan. As such, no significant burdens are placed upon United States creditors or any other foreign creditors that are inconsistent with those placed upon domestic creditors.

36. Reinforcing that spirit of fair treatment to foreign creditors, Article 167-G of the Brazilian Bankruptcy Law, which was introduced in 2021, provides that "foreign creditors are afforded the same rights that are afforded to national creditors in judicial reorganization, extrajudicial reorganization, or bankruptcy liquidation proceedings."

## IV. Prevention of Preferential or Fraudulent Dispositions of the Debtor's Property

37. Any creditor, the Brazilian Public Attorney's Office, or the judicial administrator appointed by the court within the judicial reorganization or bankruptcy liquidation proceedings, may bring actions to avoid transfers made to third parties by the debtor with the intent of harming creditors or damaging the debtor's estate if such debtor is declared bankrupt and goes into liquidation. In this instance, a plaintiff would be required to show that the following elements of fraud under Brazilian law are satisfied: (a) a claim already existed when the transfer was made; (b) the transfer left the debtor without sufficient assets to cover such claim; and (c) the debtor and the third-party transferee acted in bad faith. A transfer is presumed to have been made in bad faith where the debtor made gratuitous transfers, forgave debts, paid unsecured creditors before maturity date to the detriment of senior creditors, granted collateral to creditors when the debtor was already insolvent, or where the transferee already knew that the debtor was insolvent when the transfer was made. The court may also declare those transfers void *sua sponte* if the intent to defraud is not a disputed question of fact.

38. In addition, any creditor may bring a fraudulent conveyance action to avoid a transfer made by a debtor under reorganization to third parties. In such action, the creditor is required to show similar elements to those mentioned above with respect to transfers that result in the insolvency of the debtor.

## V. **Distribution of Proceeds of the Debtor's Property Is Substantially in Accordance with the Bankruptcy Code**

39. Based on information about the Bankruptcy Code that I have received from U.S. Counsel, I understand that, in substance, the distribution scheme prescribed in a liquidation proceeding under Brazilian Bankruptcy Law is substantially similar to the one prescribed in the Bankruptcy Code, as priority is granted to certain claims (including administrative claims) and, importantly, secured claims rank senior to unsecured claims.

40. In an EJ proceeding (such as the Brazilian EJ Proceeding), creditors' impaired claims under the plan (and only such claims) are paid according to the provisions of a confirmed EJ plan, and other claims are generally not affected by the EJ plan. However, as previously mentioned, an EJ plan (a) shall not provide for early repayment of claims subject to the EJ plan and cannot provide treatment that harms creditors not impaired by the EJ plan; (b) shall not suppress the exchange rate variation in the calculation of claims in foreign currency without the express consent of the relevant creditor; (c) shall not provide for the disposition of any asset given as collateral or release or replace such collateral without the consent of the applicable secured creditors (as prescribed by the relevant financing and/or collateral documentation); and (d) all similarly situated creditors within the same class must be treated equally (subject to narrow exceptions).

## VI. The Debtors' Brazilian EJ Proceeding

41. The Debtors commenced the Brazilian EJ Proceeding for the purpose of restructuring the Notes[5] and other certain unsecured claims owed by Debtors AGE, AGCS and AGIE. The EJ Plans have support of a creditor holding claims that represent 70% to 80%[6] of the claims subject to the EJ Proceeding. As discussed in paragraph 16 above, this satisfies the statutory approval thresholds needed to confirm an EJ plan. The EJ Plans do not include third-party releases.

42. On May 28, 2026, the Brazilian Court entered an interlocutory order, confirming the Debtors' eligibility to commence the EJ Proceeding, accepting the filing of the Brazilian EJ Proceeding, ratifying the requested preliminary 180-day stay of all collection and enforcement

[5] As a matter of Brazilian Law, the claims arising from the Notes are considered fully unsecured upon filing, as the equity that was given as collateral for the Notes has no value.
[6] In summary, the Plans were approved, as applicable, by creditors holding more than (i) 71.3% of claims owed by AGE, (ii) 79.2% of claims owed by AGIE, (iii) 73.5% of claims owed by AGCS, (iv) 77.1% of claims owed by AGINT, (v) 79.2% of claims owed by Zagope, and (vi) 79.2% of claims owed by INZAG.

proceedings commenced by creditors of claims subject to the Brazilian EJ Proceeding against the Debtors and ordering the publication of a public notice informing affected creditors of the filing of the Brazilian EJ Proceeding and the deadline to submit oppositions to the proposed EJ Plans (the "Initial Court Order"). A copy of the Initial Court Order and a certified English translation thereof are attached as Exhibit F to the Foreign Representative Declaration. The officers and directors of the Debtors continue to be duly authorized to act on the Debtors' behalf throughout the Brazilian EJ Proceeding without the need for court authorization. No party in interest objected to the jurisdiction of the Brazilian Court over any of the Debtors.

43. Under the terms of the Initial Court Order, the 180-day stay was ratified and all of the Debtors' creditors that are impaired under the EJ Plans (including holders of the Notes and agents and trustees thereof) were barred from commencing or continuing any action against the Debtors or the Debtors' assets in Brazil or elsewhere, similar to the automatic stay imposed in the United States upon a chapter 11 bankruptcy filing, including compulsory execution, provisional seizure, provisional disposition, or execution of pledges which are based on a claim being restructured pursuant to the EJ Plans.

44. Also, the Initial Court Order provided for publication of a notice to all the creditors subject to the EJ Plans informing them of the filing of the Brazilian EJ Proceeding and of the 30-day objection period within which they could choose to challenge the EJ Plans. Accordingly, on June 3, 2026, the public notice (*edital*) (the "Public Notice") was published in the Court Official Gazette, providing notice of the EJ Plans to all of the creditors subject to the EJ Plans, notifying them of the opportunity to object during the 30-day objection period. A copy of the Public Notice is attached as Exhibit G to the Foreign Representative Declaration. On June 3rd, 2026, the Debtors also published the Public Notice in a local wide-circulation newspaper (*Diário do Comércio*), in both digital and printed editions. A copy of the Public

Notice published in *Diário do Comércio* is attached as Exhibit H to the Foreign Representative Declaration. From June 8, 2026, to June 10, 2026, the Debtors sent letters, as required pursuant to Brazilian Bankruptcy Law (the "Brazilian Law Notices"), to the 2029 Indenture trustee and the 2040 Indenture trustee for distribution to the Noteholders, and to other affected creditors, on which the Debtor informed the affected creditors about the filing of the Brazilian EJ Proceeding, the main terms of the EJ Plans and the objection period. Copies of the Brazilian Law Notices are attached to the Foreign Representative Declaration as Exhibits I and J.

45. On September 30, 2026, Epiq Corporate Restructuring, LLC, in its capacity as the Debtors' information agent (the "Information Agent") sent election notices (the "Noteholder Election Notice") and election forms (the "Noteholder Election Form") to the Noteholders through the banks and brokerage firms holding Notes through DTC or such firm's nominee representative, with sufficient copies and instructions to forward such documents to the Noteholders. Foreign Rep. Decl. ¶ 38. Copies of the Noteholder Election Notice and the Noteholder Election Form are attached to the Foreign Representative Declaration as Exhibit L and Exhibit M respectively. On the same day, the Debtors posted the Noteholder Election Notice and the Noteholder Election Form on the Case Website. *Id*. The Election is currently ongoing, and is scheduled to expire on October 30, 2026.

46. The commencement of the Brazilian EJ Proceeding and the Chapter 15 Cases were duly authorized by each of the Debtors pursuant to applicable corporate laws on (a) May 8, 2026, by the board of directors of AGINT, (b) May 14, 2026, by the shareholders of AGE, (c) May 14, 2026, by the shareholders of AGCS, (d) May 14, 2026 by the shareholders of AGIE, (e) May 7, 2026, by the shareholders of Zagope, and (f) May 7, 2026, by the shareholders of INZAG (the resolutions in (a)-(f), the "Authorizing Resolutions"). The Authorizing Resolutions are attached to the Foreign Representative Declaration as Exhibit C.

47. The Authorizing Resolutions also appointed Gustavo Coutinho as the Debtors' foreign representative. Based on my experience and understanding of the relevant laws of Brazil, it is my belief that Gustavo Coutinho qualifies as a foreign representative pursuant to section 101(24) of the Bankruptcy Code and has full authority to commence the Chapter 15 Cases and seek the relief requested.

48. On July 3, 2026, the objection deadline for the EJ Plans passed, and two creditor objections were filed. One argued, among other things, that its claims could not be pooled together with the claims held by the creditor supporting the EJ Plans; while the other argued that the Debtors would have failed to submit certain documents in the dockets of Brazilian EJ Proceeding. The Brazilian Court overruled the objections and entered an order (the "Brazilian Confirmation Order") confirming the EJ Plans on September 17, 2026. A copy of the Brazilian Confirmation Order is attached as Exhibit K (including a certified English translation thereof) to the Foreign Representative Declaration. The Brazilian Confirmation Order confirmed the EJ Plans in the form it was initially proposed (i.e., the Brazilian Confirmation Order does not amend or alter the terms of the EJ Plans). As stated above, the Brazilian Confirmation Order confirmed the EJ Plans and all schedules and annexes thereto.

49. Pursuant to the Brazilian Bankruptcy Law, creditors received notice of the Brazilian Confirmation Order on June 3, 2026, through a publication in the Court Official Gazette, which is publicly available. As stated above, creditors may file an appeal of the Brazilian Confirmation Order or seek a stay of its effects within 15 business days after this notice is published.[7]

---

[7] On September 29, 2026, a creditor of the Debtors' filed a motion for clarification with respect to the Brazilian Confirmation Order, which is pending before the Brazilian Court. As such, the deadline to appeal to Brazilian Confirmation Order in the Brazilian Court will be set for 15 days from the date that the motion for clarification is decided.

50. I have reviewed and been informed of the "foreign proceeding" and "foreign representative" requirements, necessary for recognition of a proceeding under chapter 15 of the Bankruptcy Code. Based upon my experience and understanding of the relevant laws of Brazil, it is my belief that the Brazilian EJ Proceeding qualifies as a foreign proceeding "under a law relating to insolvency or adjustment of debt" pursuant to section 101(23) of the Bankruptcy Code. The Brazilian EJ Proceeding is a means of implementing an arrangement negotiated between the debtor and creditor holding the majority of the affected claims, under the supervision of the Brazilian Court.

[*Remainder of page intentionally left blank; signature page follows*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

Executed on this 30 day of September, 2026
in São Paulo, Brazil.

*/s/ Eduardo Augusto Mattar*____________

Eduardo Augusto Mattar
Mattar — Sociedade Advogados
Av. Pres. Juscelino Kubitschek, 360, 4th floor
Vila Nova Conceição - São Paulo, State of São Paulo
13571-410